Peter Wolford *vs.* Eunice E. Farnham and Husband.

July 21, 1890.

**Void Trust — Parol Agreement by Grantee to pay Proceeds of Sale to Grantor.**—A parol agreement, made at the time of executing a conveyance of real estate, that the grantee shall hold the property for the grantor until sold, and when sold pay the proceeds to him, is void, as an attempt to create a trust by parol, and the land and the money for which it is sold belong to the grantee.

**Same—Title to Proceeds of Sale.**—A mere intention, after such sale, to pay the money to the grantor, or to invest it for him, the grantee still retaining it, does not make it the money of the grantor.

**Resulting Trust for Creditors—Fraudulent Intent—Evidence.**—In an action to declare a trust under Gen. St. 1878, *c.* 43, § 8, arising upon a debtor paying the consideration for a conveyance of real estate to another, it is competent, upon the issue of fraudulent intent, to prove facts tending to show that the party so paying the consideration in good faith believed the money to be that of the grantee, and paid it for that reason, and upon no other motive.

**Same—Burden of Proof—Insufficient Finding.**—In such a case, the *onus* to disprove a fraudulent intent is on the grantee; and there must be a finding that negatives a fraudulent intent. A finding that there is no evidence of such intent is not enough, because, in the absence of sufficient evidence to disprove it, the statute imputes that intent.

**Same—Solvency of Debtor.**—A finding in such case, that the debtor was solvent at the time of paying the consideration, does not disprove the fraudulent intent.

**Husband and Wife as Witnesses against Each Other.**—Neither Laws 1889, *c.* 72, nor Laws 1885, *c.* 193, affects, except in the statutory proceeding supplementary to execution, the rule in Gen. St. 1878, *c.* 73, § 10, that a husband cannot be examined as a witness against his wife without her consent, nor the wife against her husband without his consent.

**Same—Husband as Witness for Wife.**—That a wife refuses to consent that the adverse party may examine her husband as a witness against her, does not preclude her from subsequently calling him in her own behalf.

**Hearsay Testimony — Motion to Strike Out.**—Where testimony, as though upon personal knowledge, is given on direct examination, and the cross-examination shows that it was upon hearsay, it should be struck out on motion.

On June 4, 1889, the plaintiff recovered and docketed, in the district court for Hennepin county, a judgment for $24,626.67, against the defendant Sumner W. Farnham. Execution was issued and returned wholly unsatisfied, and the plaintiff thereupon brought this action in the same court against the judgment debtor and his wife, the defendant Eunice E. Farnham, to declare and enforce a trust as stated in the opinion. The action was tried by *Rea*, J., who ordered judgment for defendants, which was entered, and the plaintiff appealed.

*J. M. Shaw, F. H. Boardman,* and *W. A. Lancaster,* for appellant.
*Miller, Young & Akers* and *Jackson & Atwater,* for respondents.

GILFILLAN, C. J. This is an action to declare and enforce a trust under Gen. St. 1878, c. 43, § 8, in favor of plaintiff as a creditor of the defendant Sumner W. Farnham, in land conveyed by one Butler to the defendant Eunice E. Farnham, upon a consideration, as claimed by plaintiff, paid by Sumner W. in fraud of his creditors. The action was tried in the court below without a jury, and findings of fact made, and judgment ordered and entered, in favor of the defendants. The conveyance by Butler to defendant Eunice E. was made March 16, 1883, for a consideration of $35,000, of which $20,000 was paid with money unquestionably belonging to the latter. The only controversy with respect to whose money paid the consideration was with regard to the other $15,000. This was paid by a check drawn by Sumner W. for $5,000, and another drawn by the firm of which he was a member for $10,000, to take up a loan he had made in his own name to another firm. Upon these facts the $15,000 so paid was *prima facie* the money of Sumner W., and, as a part of the indebtedness to plaintiff was then owing, the payment of the $15,000 was, under the section referred to, presumptively fraudulent as to what was then owing to plaintiff. The burden was then on the defendant to disprove a fraudulent intent in so paying that part of the consideration.

But the defendants claim, and the court found as a fact, that the $15,000 so paid was the money of Eunice E., and not that of Sumner W. If that finding be correct, the plaintiff's action has no foundation. The court, however, also found the facts upon which it arrived at the conclusion that the money belonged to Eunice E. This part of the case rests, therefore, on the sufficiency of those facts to support that conclusion. Stating those facts briefly, they are, in substance, that in June, 1878, Eunice E. was the owner of an undivided one-third of certain real estate on Hennepin island, Minneapolis, and it was then orally agreed between Sumner W. and her that she should convey the one-third to him, and that he should hold her interest in it for her until it should be sold, and that upon the sale of it the purchase price should be paid to and belong to her. Pursuant to such oral agreement, the defendants, being husband and wife, executed to Frank W. Farnham a deed conveying to him the one-third interest, and he thereupon conveyed to Sumner W. As we understand, each deed was absolute in terms, and made no reference to the terms of the parol agreement. In April, 1882, the whole of the real estate was sold, and the purchase price was received by one of the tenants in common, and he deposited the Farnham share of it ($37,500) to the credit of Sumner W. in the same bank upon which the latter afterwards drew the check for $5,000. Sumner W. communicated the facts of the payment and deposit to Eunice E., and she authorized him to invest the money for her, and for that purpose to draw checks against it. The loan taken up by his firm with the check for $10,000 was made by him out of the money so deposited, but was made in his own name. But it is not found that he ever, before paying the $15,000 as part of the consideration for the land conveyed to her, transferred any part of the $15,000 to her. Up to that time it stood in his own name, apparently his own property.

It must be apparent that, if the money received upon the sale of the third interest in the Hennepin island property did not belong to Mrs. Farnham as soon as it was paid by the purchaser, it did not, so far as concerns the $15,000 at any rate, become hers by anything done between that time and the transaction assailed in this case.

The mere intention to invest it for her or to pay it to her would not make the money hers. *Leonard* v. *Green*, 34 Minn. 137, (24 N. W. Rep. 915.) There can be no doubt that parties to a trust, void merely because not in writing, may, as concerns themselves, at any rate, execute it by performing what it requires. Had Summer W., upon the sale of the third interest in the Hennepin island property, paid or transferred the purchase-money to Eunice E. in performance of the parol trust, that act would have been binding, and the money would have become hers as between the two. But that was not done as to the $15,000. So that her title or claim of title to the money must rest upon the parol agreement made when that property passed from her to him. It is objected to that agreement that it was an attempt to create a trust in the land, and was void because not in writing. No trust in lands, except those arising by implication or operation of law can be created unless by deed. If, therefore, the parol agreement was an attempt to create a trust in the land or a power in trust, it was, of course, of no effect. To show that such was the character and purpose of the agreement, needs only a statement of it as it was found by the court below. It was to hold her interest in the land for her until sold, and when sold to pay the proceeds to her. Give effect to this agreement, and Sumner W. had nothing in the land but the bare legal title, the entire beneficial interest being in Mrs. Farnham. Had the terms of the agreement been inserted in the deed from Frank W. to Sumner W., the legal title would have vested at once in Mrs. Farnham, and Sumner W. would have taken nothing. Had they been inserted in her deed to Frank W., the deed would have been inoperative. The case is in most respects analogous to *Randall* v. *Constans*, 33 Minn. 329, (23 N. W. Rep. 530,) in which the oral agreement was that the grantee should take a conveyance and hold the premises in trust for the benefit of a person named, to collect the rents, pay taxes and incumbrances, sell the land, and account for and pay over the difference between the sums received and those paid by him. The court in that case held that an action on the agreement would not lie to enforce the promise to pay over the net proceeds, for "it would be equivalent to ingrafting a power in trust by parol upon an absolute deed." We need not con-

sider whether Mrs. Farnham would have had a remedy, and, if so, what, for obtaining the conveyance and then refusing to carry out the parol agreement by means of which it was obtained. The right to a remedy, if any, would have been in action, and, certainly, until enforced, could not have affected the title of Sumner W. to the land, or to the money received upon the sale of it. The question here is, whose money was it? and that is determined by the only valid agreement, to wit, the deeds.

But while the facts do not show any valid trust upon the transfer of the Hennepin island property, nor that the money derived from a sale thereof was the money of Mrs. Farnham, it does not follow that the evidence introduced from which the court found the facts was obnoxious to the objection made to it that it was incompetent, irrelevant, and immaterial. The offer of the evidence was not limited to any particular issue, but was general. If competent to prove and relevant to any of the issues in the cause, it was admissible. In addition to the issue as to whose money was used in paying for the land conveyed to Mrs. Farnham, was the other issue—material in case the money was that of Sumner W.—was it paid by him, upon the conveyance made to her, with a fraudulent intent? And on this issue the evidence referred to was proper; for if it tended to prove, as well it might, that the Farnhams in good faith believed the money belonged to Mrs. Farnham, and it was paid for her use on the conveyance to her upon that belief, or that those transactions raised a moral obligation on his part to pay it to her, and for that reason and from no other motive, it would certainly tend to disprove a fraudulent intent on the part of Sumner W. in so paying it.

Upon the matter of fraudulent intent, the only finding was that there was no evidence that the firm of which Sumner W. was a member, or either member thereof, was insolvent at the time of the conveyance to Mrs. Farnham, nor that she purchased the land with intent or for the purpose of hindering, delaying, or defrauding any of the creditors of that firm, or of Sumner W. The $15,000 having been the money of Sumner W., the statute, as to his creditors, attaches to the payment of it by him upon a conveyance to Mrs. Farnham the presumption that it was fraudulent, and it was not enough that there

was no evidence of fraudulent intent. The party endeavoring to sustain the transaction must disprove the fraudulent intent imputed by the statute, and there must be a finding which shows that it was disproved; a finding, in effect, that the transaction was an honest one; a finding that negatives the fraudulent intent. Fraudulent intent on the part of Sumner W. must be disproved and negatived in the findings. A finding that he was solvent would not suffice, for a solvent debtor may attempt to defraud his creditors. Solvency or insolvency is an important item of evidence on the issue of fraudulent intent, but not usually conclusive.

There are some assignments of error on rulings as to evidence, which, though not necessary to the decision of this appeal, we will decide, in view of a second trial. Sumner W. was called as a witness by the plaintiff, and, being objected to on behalf of the defendant Eunice E. on the ground that he was her husband, the court held he could not testify. Afterwards, in proving her case, she called him as a witness in her behalf, and the plaintiff objected to him on the ground that she had elected that he should not testify in the case. The court overruled the objection. In both rulings the court was right. Gen. St. 1878, c. 73, § 10, provides that a husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent. To this rule are excepted a civil action or proceeding by one against the other, and a criminal action or proceeding for a crime committed by one against the other, and, by Laws 1889, c. 72, are excepted "proceedings supplementary to execution." An ordinary civil action is not, whatever may be its purpose, a proceeding supplementary to execution, within the meaning of this statute. Such a proceeding is one established and regulated by statute, and is as well known by the designation here given as any statutory proceeding by the designation given it in the statute. An action may come after execution, may be even in aid of it, but it is not the proceeding referred to in the act of 1889. If the inability to call the husband or wife in an action brought after supplementary proceedings renders the discovery on those proceedings less beneficial to the party, that is a consideration for the legislature. We cannot extend the exception be-

yond the case specified in the act. It is also claimed that Laws 1885, *c.* 193, in effect repeals section 10 of chapter 73. That act does not refer to husband and wife at all. Its sole purpose seems to be to enable a party calling the adverse party to examine him as if under cross-examination, and not to provide who shall be competent witnesses. We do not see anything in the suggestion that, having refused her consent that plaintiff might examine her husband as a witness against her, she thereby waived her right to use him as a witness in her own behalf. Whether, after she called him, the opposite party could use him as a witness generally in the cause, need not be here decided.

Where a witness, on direct examination, testifies as though from personal knowledge, and the cross-examination discloses that he testified only from hearsay, the opposite party, upon motion seasonably made after it is so ascertained, has a right that the testimony shall be struck out. This is no more than saying that a party may object to incompetent evidence as soon as its incompetency is known to him and can be made to appear to the court.

Judgment reversed, and new trial ordered.